

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-510

| | |
|---|---|
| | Opinion Delivered: DECEMBER 2, 2015 |
| REGGIE MATTHEWS AND $412,890 IN UNITED STATES CURRENCY<br>APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, OSCEOLA DISTRICT [NO. CV-11-54] |
| V. | HONORABLE PAMELA HONEYCUTT, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Reggie Matthews appeals from an order of the Mississippi County Circuit Court that denied his claim for the return of $412,890 seized from the trunk of his car during a narcotics investigation involving both federal and state law enforcement. On appeal, Mr. Matthews argues that the trial court's decision should be reversed because it was founded upon erroneous findings of fact and conclusions of law. We affirm.

In 2011, the Federal Bureau of Investigation was involved in an investigation related to Randy Caruthers and his involvement in the distribution of large amounts of cocaine and marijuana in southeast Missouri and northeast Arkansas. Special FBI Agent Larry Bruns was in charge of the operation. According to an affidavit of Agent Bruns, appellant Reggie Matthews was identified as a close associate of Mr. Caruthers. Several officers of the Arkansas Second Judicial Drug Task Force were deputized as special federal law enforcement officers and joined in the investigation.

Law enforcement agents obtained information that Mr. Caruthers was preparing to deliver approximately $416,000 to his drug supplier, and Mr. Matthews was suspected to be delivering the money. Working under the direction of FBI Agent Bruns, local police officers stopped a car being driven by Mr. Matthews on June 2, 2011. Mr. Matthews initially fled from the officers, but he eventually stopped the car. He was arrested and later charged with fleeing and aggravated assault. During a search of the trunk of appellant's car, the police found a duffle bag containing $412,890 in vacuum-sealed packages. According to the officers' affidavits, Mr. Matthews disclaimed knowledge of the money and told the police that it was not his. The currency was seized by local law enforcement officers who had been federally deputized as agents of the Second Judicial Drug Task Force.

Eight days later, on June 10, 2011, the State filed a petition in Mississippi County Circuit Court to transfer the seized property to the FBI for forfeiture proceedings under federal law. Also on June 10, 2011, the Mississippi County Circuit Court entered an order transferring the property to the FBI pursuant to Arkansas Code Annotated section 5-64-505(d) (Supp. 2011), which provides:

(1) No state or local law enforcement agency may transfer any property seized by the state or local agency to any federal entity for forfeiture under federal law unless the circuit court having jurisdiction over the property enters an order, upon petition by the prosecuting attorney, authorizing the property to be transferred to the federal entity.

(2) The transfer shall not be approved unless it reasonably appears that the activity giving rise to the investigation or seizure involves more than one (1) state or the nature of the investigation or seizure would be better pursued under federal law.

In the trial court's transfer order (hereinafter referred to as the "initial transfer order"), the state trial court stated that it reasonably appeared that the nature of the seizure and forfeiture

would be better pursued under federal law, thus complying with section 5-64-505(d)(2). The FBI thereafter obtained possession of the currency.

Four months later, on October 14, 2011, Mr. Matthews filed in Mississippi County Circuit Court a motion to set aside the initial transfer order. In his motion, Mr. Matthews asserted that he was not given notice of the petition to transfer the case to federal court, and thus that he had no opportunity to respond to the motion. Mr. Matthews argued that the initial order transferring the property to the FBI was void, and he demanded the immediate return of the seized currency. In response to Mr. Matthews's motion, the State asserted that, under the terms of Arkansas Code Annotated section 5-64-505(d), there is no requirement that a person receive notice of a transfer petition, nor is there any requirement that he be given an opportunity to contest the transfer. Mr. Matthews subsequently filed several more motions with the Mississippi County Circuit Court, including a motion for summary judgment, motion to declare Arkansas Code Annotated section 5-64-505(d) unconstitutional, and two motions to dismiss.

Almost two years later, on March 13, 2013, the Mississippi County Circuit Court entered an order granting Mr. Matthews's motion to set aside the initial transfer order (hereinafter referred to as the "subsequent transfer order"), stating that a hearing shall be granted on the petition to transfer. The trial court stated its belief that the rules of civil procedure applied to the transfer petition, and it noted that Mr. Matthews was not given notice and an opportunity to be heard prior to the initial transfer order being entered. While the State had asserted that Mr. Matthews may not be the owner of the seized property and therefore may lack standing, the trial court indicated that it could not determine that issue

without evidence and a hearing. In the subsequent transfer order, the trial court denied Mr. Matthews's motion for summary judgment and also denied his motion to declare the transfer statute unconstitutional. The trial court did not make any ruling on Mr. Matthews's motions to dismiss.[1]

During the period of time between when the money had been transferred to the FBI pursuant to the initial transfer order (June 10, 2011) and the entry of the subsequent transfer order (March 13, 2013) in state court, the $412,890[2] was in possession of federal agents and forfeiture proceedings had commenced in federal court. On July 29, 2011, the FBI sent a letter to Mr. Matthews informing him of the factual and legal basis for the seizure, and advising him that if he wished to contest the seizure in federal court he must file a claim of ownership with the FBI by September 2, 2011. On August 29, 2011, Mr. Matthews filed with the FBI a claim of ownership, contesting the forfeiture of the currency.

More than a year later, on December 3, 2012, the United States District Court of the Eastern District of Missouri, Southeastern District (hereinafter referred to as the "federal trial court"), entered a preliminary order of forfeiture in favor of the United States. The preliminary forfeiture was based on four criminal defendants' admissions that the currency constituted proceeds of the offenses charged, after the four defendants entered guilty-plea agreements forfeiting any interest they may have had in the currency.[3] On February 21, 2013, the United States Attorney sent Mr. Matthews the preliminary forfeiture order

---

[1] Appellant's dismissal motions were filed after the trial court had issued a letter opinion on the other motions, but before the March 13, 2013 order was formally entered.

[2] Inexplicably, the federal documents show the forfeiture amount to be $412,900.

[3] Mr. Matthews himself was never charged with any drug offense.

advising that Mr. Matthews had thirty days to assert a legal interest in the property by filing a third-party petition in federal court.

On March 22, 2013, Mr. Matthews filed in federal court a third-party petition for return of the $412,890. Mr. Matthews asserted in his federal pleadings multiple arguments, including that the Arkansas initial transfer order had been subsequently vacated by the Arkansas trial court, that the initial transfer order was void, and that because the initial transfer order was invalid the State retained jurisdiction and the federal court was without jurisdiction over the funds. The United States Attorney filed a motion to dismiss the third-party petition for return of the property, arguing that Mr. Matthews lacked standing to challenge the forfeiture.

On August 23, 2013, the United States District Court entered an order dismissing Mr. Matthews's third-party complaint. The federal trial court ruled that it had jurisdiction over the matter and that the issue of the propriety of any state transfer order of the currency was irrelevant to the federal proceeding. The federal trial court also stated that, to the extent Mr. Matthews complained that he was losing his due-process rights to claim the property, he was fully able to exercise those rights in the proceeding at hand. The federal trial court's order stated that, although mere proof of possession may give rise to the presumption of ownership under applicable state law, as is the case in Arkansas, a claimant must also offer a plausible explanation for that possession. It stated that, to maintain standing, a claimant must establish that he has an ownership interest or possessory interest in the property and that his interest is legal. Under these principles, the federal trial court ruled that Mr. Matthews had failed to establish standing to challenge the forfeiture of the currency. On August 30, 2013,

the federal trial court entered a final order of forfeiture declaring that the United States shall have clear title to the seized currency.

Mr. Matthews appealed to the Eighth Circuit Court of Appeals, arguing that the federal district court did not have jurisdiction of his petition to return the seized currency, and also that he did have standing to assert a claim to the currency. However, in an opinion delivered on August 27, 2014, the federal appeals court affirmed, holding that the district court had jurisdiction and properly ruled that Mr. Matthews had failed to state a legal interest in the currency, thus failing to establish standing. *See United States v. Caruthers*, 765 F.3d 843 (8th Cir. 2014).

Turning back to the simultaneous proceedings in state court, as previously stated, the Mississippi County Circuit Court entered its subsequent transfer order on March 13, 2013, wherein it set aside its initial transfer order authorizing the transfer of the funds to the federal authorities because the appellant did not have notice of the proceeding. The State thereafter filed a motion to vacate the subsequent transfer order, asserting that the circuit court had lost jurisdiction to modify or vacate the order. The State later filed a motion to dismiss on the grounds that Mr. Matthews lacked standing.

On April 8, 2015, the Mississippi County Circuit Court entered its final order that is now being appealed. In that final order the state trial court denied the State's motion to vacate its subsequent transfer order dated March 13, 2013. The state trial court also granted Mr. Matthews's motion to dismiss, finding that there had never been valid service on Mr. Matthews. However, the state trial court went on to state in its final order that whether or not its initial transfer order was valid was now a moot point because, instead of having a

hearing on Mr. Matthews's interest in the property, both parties asked not to hear the issue on the merits and instead asked for a hearing on only their motions. Meanwhile, a hearing on the merits had been held in federal court, after which the federal trial court found that Mr. Matthews had no ownership interest in the property, but that he merely had possession. The state trial court stated that any claim Mr. Matthews would have had regarding due process, and a right to be heard in Arkansas, were moot because he appeared in federal court on that issue with an attorney and actively participated in that federal proceeding. Because Mr. Matthews had his day in federal court, and the issue of ownership and standing were decided against him in federal court, the state trial court concluded that Mr. Matthews was precluded by collateral estoppel and issue preclusion from asserting a valid claim to the seized currency in the state proceeding. Therefore, the trial court dismissed the case and denied Mr. Matthews's claim for the return of the property.

On appeal from the state trial court's April 8, 2015 order, Mr. Matthews raises a myriad of arguments challenging the underlying procedures utilized in this forfeiture case. He contends that the currency was not subject to seizure under any of the provisions of our forfeiture statute. Citing *In Re: $3,166,199*, 337 Ark. 74, 987 S.W.2d 663 (1999), appellant further asserts that, once the currency was seized in Mississippi County by local officers, initial jurisdiction was vested in the Mississippi County Circuit Court and any subsequent transfer required a circuit-court order. Although the Mississippi County Circuit Court did enter an order transferring the currency to federal agents, Mr. Matthews claims that that transfer order was invalid because it was issued without any notice to him. Thus, appellant argues that only the state circuit court, and not the federal court, had jurisdiction over any

proceedings involving the seized currency. Mr. Matthews further relies on Arkansas Code Annotated section 5-64-505(g)(3)(B), which provides in part that in no event shall a complaint for forfeiture be filed more than 120 days after the date of the seizure. Subsection (g)(3)(C) provides in part that if the circuit court determines that good cause has not been established, the circuit court shall enter an order that the seized property be returned to the owner or interest holder (assuming the owner or interest holder can be identified). Mr. Matthews argues that because there was no complaint filed in circuit court within 120 days as required by statute, the circuit court was required to return to him the $412,890 in currency.

We hold that the trial court properly dismissed the case and denied Mr. Matthews's request for the return of the currency because Mr. Matthews's claims before the trial court were barred by the collateral-estoppel doctrine. *In Craven v. Fulton Sanitation Serv., Inc.*, 361 Ark. 390, 394, 206 S.W.3d 842, 844 (2005), our supreme court explained the collateral-estoppel doctrine:

> Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment. To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. Collateral estoppel may be asserted by a stranger to the first judgment, but the party against whom it is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in that first proceeding. (citations omitted).

In the federal-court proceedings involving the forfeiture of the same currency, Mr. Matthews was given notice of the proceedings and was advised of his right to assert a

legal interest in the property. Mr. Matthews did, in fact, assert an interest and make a claim in the federal proceedings, and he had a full and fair opportunity to litigate, with an attorney, his claim in federal court. The federal court determined that it had jurisdiction, and it issued a decision denying Mr. Matthews's third-party petition on the grounds that he failed to establish ownership or a legal interest in the property, and therefore lacked standing. Mr. Matthews unsuccessfully appealed these rulings to the Eighth Circuit Court of Appeals.

In the Mississippi County Circuit Court's April 8, 2015 final order, it correctly determined that the issues of ownership, standing, and Mr. Matthews's claim to the currency had been decided in federal court. Giving full faith and credit to the federal court order, the circuit court found that Mr. Matthews could not relitigate the issue of standing and that the funds should not be delivered to him when it had been finally determined that he had no valid claim to them.

The issue of Mr. Matthews's standing to even assert an interest in the property was decided adversely to him by the federal court's order finding that he had failed to establish ownership or any legal interest, and Mr. Matthews is precluded from relitigating that issue in the state proceeding. That being so, we affirm the Mississippi County Circuit Court's decision denying appellant's claim for return of the currency.

Affirmed.

GLOVER and HOOFMAN, JJ., agree.

*James W. Harris*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Bailey Kane*, Ass't Att'y Gen., for appellee.